FINK v. GRAND TRAVERSE PACKING CO.

1. SALES—MODIFICATION OF CONTRACT—INFERENCE OF CONSENT TO CHANGE.
   In action for damages for nondelivery of car of cherries, where seller sent all its communications to buyer through brokers, evidence that buyer and brokers had agreed on modification of contract, which was communicated to seller both before and after part shipment under contract, that seller did not express surprise or dissent when notified of confirmation of modified contract, and that seller did not assert it had not accepted modification even after claim for damages, raised reasonable inference that seller had agreed to change.

2. SAME—CONTRACT BINDING ON PARTIES.
   Where buyer, in confirming second contract for cherries, unqualifiedly approved original contract, and seller had already executed contract, both parties were bound by original contract, unless it had been modified by mutual agreement, and, if modified, it was binding on them.

3. SAME—BREACH OF CONTRACT—MEASURE OF DAMAGES.
   In action for damages for nondelivery of car of cherries, damage was difference between contract price and market value in vicinity of defendant's place of business at time of breach of contract.

Error to Grand Traverse; Gilbert (Parm C.), J. Submitted October 16, 1929. (Docket No. 119, Calendar No. 34,234.) Decided December 3, 1929.

Assumpsit by David, Abe, and Maurice Fink, doing business as the Fink Company, against the Grand Traverse Packing Company, a corporation, for breach of a contract to supply cherries. From a judgment for plaintiffs, defendant brings error. Affirmed.

*C. L. Dayton,* for plaintiffs.

*Henry Miltner* and *W. P. Crotser,* for defendant.

FEAD, J. This is a suit for damages for non-delivery of a car of cherries. It was tried before the court without a jury, and plaintiffs had judgment on the basis of failure to deliver 750 crates of No. 10 cherries, the court holding that the contract had been canceled as to No. 2 cherries.

April 15, 1925, through Potts Brokerage Company as brokers, defendant agreed to sell plaintiffs two cars of cherries. The parties executed a separate contract for each car. In forwarding them to plaintiffs the brokers stated that the contract for the second car was at buyer's option after the first car was received. This was understood to mean the second contract would not be effective without later confirmation by plaintiffs. Each contract covered 750 cases of No. 10 and 100 cases of No. 2 cherries. Later, plaintiffs and the brokers agreed that all the cherries should be No. 10. The brokers notified defendant that plaintiffs had changed the specifications and asked it not to ship the first car until it received another letter with the revised assortment. The other letter was not produced. Plaintiffs wired defendant asking shipment of the first car, and, on July 18th, wrote defendant stating:

"We advised you some time ago to ship us 800 cases No. 10 in the car to Dallas and 100 cases No. 10 in the Ft. Worth pool car. This cancels our order for No. 2's."

The first car, containing all No. 10 cherries, was shipped July 31st, and paid for. On August 19th plaintiffs wrote the brokers confirming contract for the second car. This letter was not produced, but

is referred to in the letter from the brokers to plaintiffs on August 21st, reciting:

"We have your letter of the 19th and are today advising the Grand Traverse Packing Company that you confirm the booking of your second car of cherries, for shipment in accordance with your letter, and will await your instructions.

"We are sure these people would like to get these cherries moving before December if there is any way you can use same."

On the same day the brokers wrote defendant:

"We have this morning letter from the Fink Company of Dallas, Texas, confirming their order for the second car Montmorency cherries, booked for shipment their option to December 31, 1925, as per contract dated April 15, 1925.

"We have already advised you to make the assortment on this car 800 cases 6-10's the same as the car you have already shipped them, cutting out the No. 2's entirely in both cars and giving them instead 100 cases of 6-10's in our Ft. Worth pool car, as covered by instructions sent you last week.

"Please acknowledge receipt of this letter, so we will know the matter is having your attention."

In reply, defendant wrote the brokers on August 29th that, because of a shortage of cherries, on order of two cars it was filling only one, and asking cancellation of the second Fink car. It does not appear that this request was ever communicated to plaintiffs.

On December 15th plaintiffs wrote the brokers asking for shipment. On December 28th plaintiffs wired like request to defendant, confirming it the next day by letter. Defendant did not answer directly, but, on January 2d, the brokers wrote plaintiffs setting out that defendant could not make de-

livery because of the shortage of cherries, and suggested that the order stand for the next season. January 5th plaintiffs wrote defendant asking damages. Nothing further seems to have been done until March 4th, when plaintiffs' attorney wrote defendant for settlement of damages, and, on March 18th, defendant asked for a statement of the loss.

Defendant contends that the contract for the second car of cherries was not in effect because there was no unconditional confirmation of it; that the confirmation by plaintiffs contemplated a modification through cancellation of No. 2 cherries and substitution of No. 10, and that such change was never agreed to by defendant. ·

Defendant sent all its communications to plaintiffs through the brokers. The testimony is undisputed that the plaintiffs and the brokers had agreed upon modification of the contract. The correspondence shows that a modification was communicated to defendant both before and after shipment of the first car. It shipped the first car in accordance therewith. It expressed no surprise or dissent when notified of the confirmation of the second contract and the brokers' advice to change the assortment, and, although unable to fill the order, and even after claim of damages was made, at no time, in correspondence with the brokers, plaintiffs, or the latter's attorney, did defendant make an assertion that it had not understood and accepted the modification. The reasonable inference is that it had agreed to the change.

Moreover, upon the face of the correspondence, the confirmation of the second contract by plaintiffs to the brokers, and as communicated to defendant, was an unqualified approval of the original contract. The further advice of the brokers to the defendant to change the assortment was not stated as part of

plaintiffs' order of confirmation nor shown to have been a part thereof. Defendant having already executed the contract, and plaintiffs having given unequivocal confirmation, both were bound by the original contract unless it had been modified by mutual agreement. In any event, both were bound by the contract whatever it was.

It is of no consequence here whether the original contract or the modified contract be found to have been in force, as the court allowed a judgment of damages only on the basis of 750 cases of No. 10 cherries, which amount was included in both the original and the modified contract.

There was ample testimony of the market value of cherries in the vicinity of defendant's place of business at the time of the breach of contract to furnish a basis for application of the usual rule of damages, the difference between the contract and the market value.

The court made proper allowances for freight, and judgment is affirmed, with costs.

NORTH, C. J., and BUTZEL, WIEST, CLARK, McDONALD, POTTER, and SHARPE, JJ., concurred.